IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH EUBANKS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 07-527-GPM ) |
| THE KROGER CO. and UNITED FOOD & COMMERCIAL WORKERS, LOCAL 700, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Kenneth Eubanks sued Kroger Company (hereafter "Kroger") for wrongful termination in violation of a collective bargaining agreement and Local 700 of the United Food and Commercial Workers (hereafter "the Union") for breach of its duty of fair representation. These two claims are known together as a "hybrid" claim under section 301 of the Labor-Management Relations Act, 29 U.S.C. §185. Kroger and the Union moved for summary judgment, and the Court held a hearing on the motions on September 15, 2008. For the reasons set forth below, the motions are granted.

**I. BACKGROUND.**

Eubanks worked for Kroger for more than twenty years. He was employed as a journeyman meat cutter in Kroger's Mount Vernon, Illinois, store, and was a member in good standing of the Union at all relevant times. While taking inventory of stock in November 2006,

he discovered several pounds of frozen shrimp at the bottom of a freezer which were two years out of date. He asked the head meat cutter, Jeff Moore, if he could take the shrimp home as catfish bait, but Moore told him to dispose of the product instead. In spite of this explicit instruction, Eubanks purchased the shrimp himself and took it home. The next day, Eubanks was asked whether he had purchased the shrimp. He admitted the purchase and returned it to the store.

Eubanks was suspended pending an investigation. After the investigation, Kroger terminated him. He filed a timely grievance with the Union, and a grievance meeting was held with Rick Fitzgerald, the Union's representative; Alan Quinkert, the human resources manager of Kroger; and Mike Batson, the store manager. Following the grievance meeting, the Union decided not to pursue Eubanks's grievance, and it did not proceed to arbitration. This lawsuit followed.

## II. ANALYSIS.

The standard for summary judgment is outlined by the Supreme Court in *Celotex Corp. v. Catrett*, which states that, after sufficient time for discovery has elapsed, the Court may enter judgment as a matter of law if there is no genuine issue of material fact before the Court. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court also stated that when reviewing a motion for summary judgment, the Court will view the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The procedure for filing a hybrid claim for wrongful termination under a collective bargaining agreement was laid out in *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293 (7th Cir. 1992) and *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238 (7th Cir. 1997). A

plaintiff must first follow all dispute resolution systems implemented by the collective bargaining agreement between the parties. *Ooley*, 961 F.2d at 1297. If the representative group did not act in accordance with its duty of fair representation, then a hybrid claim may be brought against both the union and the employer. *Id.* at 1298. If an employer did not violate the terms of the collective bargaining agreement in terminating the plaintiff, the fair representation claim against the union is also dismissed. *Crider*, 130 F.3d at 1241. Generally, courts are reluctant to interpret a collective bargaining agreement as a matter of law when the parties have implemented a grievance mechanism to resolve such disputes. *Id.* For cases involving breach of duty of fair representation, however, a court must determine the arguable merits of the grievance by examining the contract. *Id.* at 1241-2. Only ambiguous language in the collective bargaining agreement should be left as questions of fact for a jury. *Ooley*, 961 F.2d at 1298.

Since 2002, Kroger has had a policy of not selling outdated meat to anyone for any purpose. This policy was promulgated throughout Kroger's stores, and Eubanks was aware of this policy. The collective bargaining agreement governing Eubanks's employment provides that violation of a store policy is grounds for dismissal. It is undisputed that Eubanks was aware of the provision against selling outdated meat and that Eubanks purchased the outdated meat and took it home that same day. Because Eubanks violated a store policy, his termination was not a violation of the collective bargaining agreement.

To determine if a portion of a collective bargaining agreement has been applied arbitrarily or pretextually, a plaintiff must show prior cases of substantial similarity in which a different decision was made. The plaintiff may also show that other impermissible factors were used in making the decision for termination, such as gender, race, or other constitutionally

protected classes.

To show a case of substantial similarity between the plaintiff and a third party who was not dismissed, the plaintiff must show that the third party was "prima facie identical in all respects." *McDonald v. Village of Winnetka*, 371 F.3d 992. The third party must be similarly situated with regards to performance, qualifications, and conduct, and the incident of the plaintiff's discharge must be virtually identical to the third party's misconduct. *Id*.

Eubanks has not alleged that he was part of a protected class and that his membership in this class led to his dismissal. Instead, he has relied on the conduct of other employees in selling outdated meat without repercussions from management. He has produced affidavits from several current and former employees of Kroger testifying that they also sold outdated meat. But these affidavits are dissimilar in time, location, and circumstances, and thus fall short of the substantial similarity threshold.

For example, Eubanks introduced an affidavit of George Herron, who was employed by Kroger as a meat cutter until 1997. Herron testified that he both purchased and sold outdated meat during his employment. Herron's employment ended, however, before the Kroger policy on selling outdated meat was implemented in 2002. Furthermore, Herron did not testify that he had been ordered by his supervisor specifically *not* to purchase outdated meat.

Larry Travelstead also filed an affidavit wherein he stated that he also had purchased and sold outdated meat with the knowledge of his supervisors during his employment by Kroger as a head meat cutter. His employment ended in 2006. He stated that he knew of two other employees who had purchased or sold outdated meat since the implementation of the store policy named Larry Radcliff and Kenny Crabtree. Both were disciplined by management but

allowed to keep their jobs. The employment status of Larry Radcliff is unclear, but Kenny Crabtree was employed as a head meat cutter. There is no evidence in the record, however, that either was directly instructed by their supervisor not to purchase outdated meat prior to their infractions, and Travelstead did not provide testimony as to the exact details of either incident. Kenny Crabtree is now deceased, and no evidence was introduced from Radcliff.

Eubanks also introduced the affidavit of Jeff Moore, the head meat cutter in the employ of Kroger. Moore testified to several incidents where he was told to sell outdated meat by management prior to the implementation of the 2002 policy. He also related that he knew of three employees who had sold or purchased outdated meat since the implementation of the policy. In addition to the two identified above, he also identified deli manager Toni Hoyt, who was demoted in February 2007 because a meat clerk had sold outdated product. Moore does not provide any other details as to the incident, and no evidence was introduced from Hoyt.

Finally, Eubanks filed his own affidavit. He stated that the store manager, Mike Batson, had previously ordered the sale of outdated product on at least three occasions after the implementation of the 2002 policy. On one occasion, Batson ordered outdated ground beef to be mixed with fresh ground beef and sold at a reduced price. On another occasion, outdated potatoes were sold under the instructions of Batson, and on a third occasion, outdated salmon was sold at a reduced price because of an overstock.

The evidence of these affidavits goes to show that Kroger implemented a policy of not selling outdated meat and that infractions of the policy were met with disciplinary action. None of the persons identified as selling outdated product was of the same employment level Eubanks. Larry Radcliff is identified as meat manager in the affidavit of George Harron, and Kenny

Crabtree, now deceased, is identified as a meat manager by Jeff Moore. Toni Hoyt is identified by Moore as a deli manager. Furthermore, no evidence was introduced that these persons so disciplined were instructed by their immediate supervisor that such a sale was prohibited, and no evidence was solicited directly from any of these three people. All three were either demoted or suspended for their infractions.

Kroger did not wrongfully terminate Eubanks, and, therefore, both defendants are entitled to summary judgment.

### III. CONCLUSION.

The motions for summary judgment (Docs. 40, 42) are **GRANTED**, and all claims are **DISMISSED on the merits**. The Clerk is **DIRECTED** to enter judgment accordingly. The parties shall bear their own costs.

**IT IS SO ORDERED.**

DATED: 11/03/08

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge